UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
HEATHER HAUPTMAN and TIMOTHY MOSS, :
*individually and on behalf of others similarly situated*, :
:
                       Plaintiffs, :        MEMORANDUM
:       DECISION AND ORDER
      -against-                            :
:       17 Civ. 9382 (GBD)
INTERACTIVE BROKERS, LLC, :
:
                       Defendant. :
------------------------------------- x

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Heather Hauptman and Timothy Moss commenced this putative class action against their former broker-dealer, Defendant Interactive Brokers, LLC, alleging that Defendant had a contractual obligation not to include certain exchange traded notes ("ETNs") in their portfolio margin investment accounts. (*See* Compl., ECF No. 5.[1]) On June 12, 2018, this Court issued an Order dismissing Plaintiffs' claims. (*See* Order.) Plaintiffs move for leave to file a proposed First Amended Complaint (the "FAC," Pls. Letter, Ex. A, ECF No. 58-1). Plaintiffs' motion is DENIED, because the proposed amendments would be futile.

### I.    FACTUAL BACKGROUND

In the FAC, as in the original complaint, Plaintiffs allege that they each signed a Customer Agreement to open a trading account with Defendant. (FAC ¶ 25; *see also id.*, Ex. 1 ("Customer

---

[1] After filing their original complaint, Plaintiffs filed a "Corrected Class Action Complaint." (ECF No. 5.) Because that document is listed on the docket as the "Amended Complaint," it was cited in this Court's June 12, 2018 Memorandum Decision and Order (the "Order," ECF No. 57), as "Am. Compl." However, Plaintiffs refer to their proposed amended pleading as their "First Amended Complaint ("FAC"). (*See* Letter from Frederic S. Fox to this Court dated July 12, 2018, ECF No. 58 ("Pls. Letter"), at 1.) To avoid confusion, the Corrected Class Action Complaint is cited herein as "Compl."

Agmt."), ECF No. 58-1; Compl. ¶ 32.[2]) Plaintiffs also allege that they each signed a document entitled "Portfolio Margin Risk Disclosure Statement," which is referred to in the FAC as the "Disclosure Agreement." (FAC ¶ 26; *see also id.*, Ex. 2 ("Disclosure Agmt."), ECF No. 58-3; Compl. ¶ 34.) In their original complaint, Plaintiffs asserted two breach of contract claims—one for a breach of the Customer Agreement and one for a breach of the Disclosure Agreement. (Compl. ¶¶ 77–92.) Additionally, Plaintiffs asserted claims for promissory estoppel, unjust enrichment, breach of the implied covenant of good faith and fair dealing, negligence, and declaratory and injunctive relief. (*Id.* ¶¶ 78–130.)

In the Order, this Court found that the provisions of the Customer Agreement that Plaintiffs alleged that Defendant breached "serve[] to 'inform [Plaintiffs] that [their] trades are constrained by the rules of governing regulatory agencies' and do[] not impose any obligations on Defendant." (Order at 15 (quoting *Gurfein v. Ameritrade, Inc.*, 312 F. App'x 410, 413–14 (2d Cir. 2009)). Similarly, this Court found that the Disclosure Agreement is merely "an 'acknowledgment that [Plaintiffs'] trades are subject to applicable rules and regulations'" and, as such, "does not 'impose any contractual obligations on' Defendant." (*Id.* at 16 (quoting *Gurfein*, 312 F. App'x at 413).)

In the FAC, Plaintiffs assert two claims (one for breach of contract and one for breach of implied contract) based on Defendant's "breach[] [of the] Disclosure Agreement *as modified by* the 2014 Agreements."[3] (FAC ¶¶ 74, 81 (emphasis added).) The 2014 Agreements consist of: (1)

---

[2] In determining whether the FAC is sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6), this Court may properly consider "documents attached to the complaint as exhibits." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). Although Moss's Customer Agreement is not an exhibit to the Complaint, this Court may consider it because the FAC "relies heavily upon its terms and effect, which renders the document 'integral' to the complaint." *Apotex, Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 61 n.6 (2d Cir. 2016) (citation and additional internal quotation marks omitted).

[3] Plaintiffs' claim for breach of an implied contract is divided into two subsections, one entitled "The Disclosure Statement and the 2014 Agreements" and one entitled "The 2014 Agreements." (FAC at 19, 21.) Because, as explained *infra*, the Customer Agreement is a valid express contract that governs the

2

a bulletin posted on Defendant's website in April 2014 ("Article 2175") and (2) a May 14, 2014 email to investors (the "May 2014 Email"). (*Id.* ¶¶ 27–28; *see also id.*, Ex. 3 ("Article 2175"), ECF No. 58-4; *id.*, Ex. 4 ("May 2014 Email"), ECF No. 58-5.) Article 2175 lists "ETN products which will no longer be eligible for Portfolio Monitoring . . . during the week beginning May 19, 2014." (Article 2175 at 1.) Plaintiffs allege that Article 2175 remained on Defendant's website until at least January 2016. (FAC ¶ 27.) The May 2014 Email states, "Pursuant to a recent decision by FINRA whereby . . . ETNs . . . will no longer be eligible for portfolio margining, these securities, including options having an ETN as an underlying [sic], will be phased out of the program by OCC during the week of May 19, 2014." (May 2014 Email.) The May 2014 Email also states that Defendant's customers should "refer to [Article] []2175 for a list of the ETNs and options impacted by this change." (May 2014 Email.) In addition to their contract-based claims, Plaintiffs also assert claims for promissory estoppel and breach of the implied covenant of good faith and fair dealing. (FAC ¶¶ 89–99.)

## II. LEGAL STANDARDS

"Rule 15(a) of the Federal Rules of Civil Procedure provides that [a] court should grant leave to amend 'freely . . . when justice so requires.'" *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 252 (2d Cir. 1991) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, "[i]t is well established that leave to amend a complaint need not be granted when amendment would be futile." *Kimm v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) (quoting *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)). "Amendment to a pleading is futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Long v. Perry*, 679 F. App'x 60, 63 (2d Cir. 2017) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

---

subject matter at issue and contains an integration clause, the 2014 Agreements cannot form the basis of a separate implied contract.

To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding a Rule 12(b)(6) motion, the court draws all reasonable inferences in the plaintiff's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013).

## III. THE PROPOSED AMENDMENTS TO THE COMPLAINT ARE FUTILE

Plaintiffs assert that their new "breach of contract claims now rest upon the theory that additional promises and commitments by [Defendant] made in . . . the 2014 Agreements[] exceed those [obligations] imposed by FINRA." (Pls. Letter at 2.) However, neither the Disclosure Agreement nor the 2014 Agreements indicate that Defendant agreed to assume obligations beyond those imposed by FINRA. As in the original complaint, Plaintiffs expressly allege in the FAC that the Disclosure Agreement is "FINRA mandated" and "modeled after FINRA NTM 08-09." (FAC ¶ 70 (citing Disclosure Agmt.); *see also* Compl. ¶ 88 (citing same).) Thus, Defendant's provision of the Disclosure Agreement to potential customers simply reflects Defendant's compliance with FINRA rules.

As explained in the Order, "no private right of action exist[s] . . . for violations of . . . FINRA rules." (Order at 15 (quoting *Lobaito v. FINRA*, No. 16 Civ. 6011 (GBD) (alteration and omissions in original).) Plaintiffs assert that their breach of contract claims no longer rest on the

4

"legal theory that FINRA Rule 4210(g) was an *actionable element* of the parties' agreements." (Pls. Letter at 2 (emphasis added).) However, Plaintiffs' contract claims are still premised on the theory that Defendant included securities in its calculation of portfolio margin that were ineligible for such treatment. (FAC ¶¶ 73, 81, 86 (alleging that Defendant breached the Disclosure Agreement and 2014 Agreements "[b]y including ETNs in its calculation of portfolio margin levels for the accounts of Plaintiffs and Class members"); *see also* Compl. ¶¶ 83, 90 (same).) The eligibility of products for portfolio margin treatment is governed by FINRA Rule 4210. *See* FINRA Rule 4210(g) (listing products to which "members may elect to apply the portfolio margin requirements"). Thus, the gravamen of Plaintiffs' claims is still that Defendant violated Rule 4210. As explained in the Order, Plaintiffs cannot create a private right of action for violation of Rule 4210 by "styling their claim as a breach of contract." (Order at 15 (citing *Gurfein*, 312 F. App'x at 414).)

Plaintiffs assert that the 2014 Agreements reflect Defendant's "decision to implement Article 2175," which was made "without regard to FINRA rules or regulations." (Letter from Frederic S. Fox to this Court dated Aug. 27, 2018 ("Pls. Reply Letter"), ECF No. 64, at 5.) However, while the 2014 Agreements do not expressly cite FINRA rules or regulations, it is clear that the 2014 Agreements were made in response to a decision by FINRA. The May 2014 Email expressly states, "*Pursuant to a recent decision by FINRA* whereby Exchange Traded Notes (ETNs) will no longer be eligible for Portfolio Margining, these securities, including options having ETNs as underlying [sic], will be phased out of the program by OCC during the week of May 19, 2014." (May 2014 Email (emphasis added).) The May 2014 Email then directs customers to "refer to [Article] []2175 for a list of ETNs and options impacted by this change." (*Id.*) In other words, the 2014 Agreements inform Defendant's customers of FINRA's decision and the impact

5

of that decision on their portfolios. Because the 2014 Agreements, at most, reflect Defendant's commitment to comply with FINRA's decision, the 2014 Agreements do not impose any obligations on Defendant in excess of those imposed by FINRA.

Moreover, even if this Court were to find that the 2014 Agreements imposed obligations beyond those imposed by FINRA, the Customer Agreement, which Plaintiffs signed in 2015, contains an integration clause. (*See* Customer Agmt. at 11 (signed by Hauptman on June 19, 2015); Letter from Christian T. Kemnitz to this Court dated Aug. 2, 2018 ("Def. Letter"), Ex. B, ECF No. 61-2 (identical Customer Agreement signed by Moss on June 2, 2015).) The Customer Agreement states that it "governs the relationship between Customer[s] and [Defendant]," and the integration clause states that "this Agreement contains the entire agreement between the parties, who have made no other representations or warranties." (Customer Agmt. ¶¶ 1, 32(B).) The purpose of such a "general merger provision, . . . containing the language . . . that it 'represents the entire understanding between the parties' is to . . . bar the introduction of extrinsic evidence to vary or contradict the terms of the writing." *ABHA Int'l, LLC v. Clover Int'l Corp.*, No. 11 Civ. 6841 (KBF), 2012 WL 569187, at *3 (S.D.N.Y. Feb. 16, 2012) (quoting *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 627 (N.Y. 1997) (additional internal quotation marks omitted)); *see also In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999) ("The parol evidence rule forbids" the introduction of evidence "that might add to or vary the terms of a written contract that was intended to embody the entire agreement between the parties.") (quoting *Albany Sav. Bank, FSP v. Halpin*, 117 F.3d 669, 672 (2d Cir. 1997)).

Given that Plaintiffs' Customer Agreements were signed in 2015, their assertion that "[i]ntegration clauses only apply to preclude alleged agreements made prior to the signing of the contract containing the integration clause, not those made subsequent to the written contract" is

irrelevant. (Pls. Reply Letter at 3 (quoting *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 412 n.9 (S.D.N.Y. 2011)).) The fact that other customers of Defendant signed their Customer Agreements prior to the 2014 Agreements cannot save the named Plaintiffs' claims. *See In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, No. 09 Civ. 2137 (LTS), 2010 WL 3239430, at *4 ("If the *named* plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others have a valid claim.") (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 112 (S.D.N.Y. 2002)).

Plaintiffs also argue that the integration clause in the Customer Agreement does not bar their claim for breach of an express contract premised on the 2014 Agreements because the 2014 Agreements concern portfolio margin. (Pls. Reply Letter at 3–4.) Plaintiffs assert that the Customer Agreement "has been specifically found not to create any obligation to [sic] Interactive Brokers [LLC] with respect to portfolio margin accounts." (*Id.* at 3.) But Plaintiffs' assertion is incorrect. In the Order, this Court found that the particular provisions of the Customer Agreement cited by Plaintiffs did "not impose any obligations on Defendant." (Order at 15.) However, this Court did not find that *no* provision of the Customer Agreement imposed *any* obligations regarding portfolio margin. Paragraph 11 of the Customer Agreement, entitled "Margin," contains provisions other than those cited by Plaintiffs that impose obligations on both parties. (Customer Agmt. ¶ 11.) The fact that Plaintiffs have not alleged that those provisions impose the specific obligation that Plaintiffs alleged was breached—*i.e.*, an obligation not to use ETNs in the calculation of portfolio margin—is immaterial. Because the Customer Agreement addresses the subject matter at issue and states that it is the "entire agreement between the parties," the parol

7

evidence rule forbids the introduction of the 2014 Agreements to "add to or vary the terms of" the Customer Agreement. *In re Altro*, 180 F.3d at 375.

Plaintiffs' claim for breach of an implied contract also fails. Plaintiffs argue that they should be permitted to plead an implied contract claim based on the Disclosure Agreement and 2014 Agreements "in the alternative to[] their express contract claim." (Pls. Reply Letter at 7.) "But under New York law, '[a] contract cannot be implied in fact where there is an express contract covering the subject matter involved.'" *Saeed v. Kreutz*, 606 F. App'x 595, 597 (2d Cir. 2015) (quoting *Julien J. Studley, Inc. v. N.Y. News, Inc.*, 512 N.E.2d 300, 301 (N.Y. 1987)) (alteration in original).

Plaintiffs' claims for promissory estoppel and breach of the implied covenant of good faith and fair dealing fail for similar reasons. Although Plaintiffs argue that their quasi-contract claims are now premised on the Disclosure Agreement and the 2014 Agreements, Plaintiffs do not dispute that the Customer Agreement is a valid contract. (Pls. Reply Letter at 7.) The Customer Agreement states that it "governs the relationship between Customer[s] and [Defendant]." (Customer Agmt. ¶ 1.) As explained in the Order, "'quasi-contract claims'. . . must be dismissed as duplicative of a breach of contract claim when, as here, there is a 'valid and enforceable written contract governing . . . the same subject matter.'" (Order at 16 (quoting *Nahabedian v. Intercloud Sys., Inc.*, No. 15 Civ. 669 (RA), 2016 WL 155084, at *4 (S.D.N.Y. Jan. 12, 2016)).)

Because none of the claims in the FAC would survive a motion to dismiss, leave to amend would be futile. *Long*, 679 F. App'x at 63.

8

## IV. CONCLUSION

Plaintiffs' motion for leave to file the FAC, (ECF No. 58), is DENIED.[4]

Dated: New York, New York
October 19, 2018

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[4] Defendant's motion for leave to file a sur-reply, (ECF No. 65), is DENIED as moot.